Mr. Harris, I noticed you had a crutch there. Do you have a problem with your ankle? You don't have to stand up because of that. So I appreciate that. All right. Would you like to argue from where you're seated? If that's all right, I would. Thank you. May it please the court. Good morning, Your Honors. Good morning, Counsel. My name is Richard Harris. I'm here with the Office of the State Appellate Defender on behalf of the defendant at Blount, Mr. Tyler Williams. Excuse me. Just excuse me. Just one minute. Mr. Mankin, can I see you for one second? I put the wrong file. Could you go away? Would you like me to wait? It's right. Go ahead. Okay. Okay. Your Honor, first of all, thank you for the accommodations here this morning. I had ankle surgery about a month ago. I don't think I'd be okay to stand for the duration of the argument. No problem. Now, my client, Mr. Williams, requested this court reverse his probation revocation pending the outcome of a new hearing on the merits. And the issue today is whether Mr. Williams' constitutional right to a public trial was violated when the circuit court judge removed three people from his probation revocation hearing. Counsel, does he have a statutory right based on the language of the statute? Yes. Our position certainly is that he does. The Illinois statute on probation revocation hearings you're referring to, the open court language. Now, I know that the state has taken the position, they offered a Black's Law dictionary definition, which did not mention the right to a public trial. However, there is, if you look at the Black's Law definition, the second definition, which states it's a court session the public is free to attend. And I think given the procedural safeguards that are already set in place by, I'm going to call it Gagnon versus Scarpelli, I believe that the second definition, which holds the court session that the public is free to attend, I believe that definition is the far more appropriate definition in interpreting that statutory right. Now, is it a Sixth Amendment right, if you're talking about a constitutional right or a due process right, apart from the statutory right? It's both, Your Honor. The Sixth Amendment of the United States Constitution, as well as Article I, Section 8 of the Illinois Constitution, both, I mean, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. Is it a criminal prosecution? I know, I understand that it is a civil proceeding, but I do think we can still refer to it as a criminal prosecution. Why? It's the loss of liberty that's involved, Your Honor. The more I look at these cases and think this issue over and think about whether the right to a public trial would extend to a probation revocation proceeding, I simply cannot come up with a good reason why it would not. About people versus Lindsay, because that was the exact same argument that was made in McNary before this court, and then Lindsay abrogated McNary in the Supreme Court. And, I mean, are you referring to just, are we talking about the fact that it's a civil proceeding? No, Your Honor. We're not taking issue with that. That's settled law. It is a civil proceeding. It's part of the Civil Code. What I'm talking about is the right to the public to attend. And I don't, I mean, the public is free to attend here today. The halls of justice are presumptively open. Well, but does that mean that a court cannot exclude anyone from a courtroom for any reason, Counsel? Oh, most certainly not, Your Honor. It simply means they need to follow the test that's in place. That's the Press-Enterprise-Waller test. Well, wasn't that followed in this case? I don't think it was followed. And, quite frankly, I mean, I don't think it's close. We have a judge here who removed three people from the courtroom based on... Go ahead. It was based on this alleged threat of witness intimidation. But when first presented with this issue, the trial judge said there's nothing he could or should do about it because the witness had already testified and left the courtroom. And so I don't think that the prosecution ever offered an overriding interest to close the proceedings in the first instance. And are you saying the judge couldn't have reconsidered what he first said sua sponte? And he could have reconsidered that, Your Honor. Well, weren't his remarks that he made indicative that he had? I'll grant that, but I still don't think that means that the prosecution still failed to present an overriding interest. They still failed the first problem of the test. Witness intimidation was not sufficient. They were not completed. The hearing hadn't been completed. The defendant had not presented his case or certainly hadn't decided whether to testify. And certainly the state, if he had or if the defense had completed putting on witnesses, would have had the right to rebuttal. Your Honor, I believe, if you look, the record reflects that the prosecutor, her remarks were confined solely to Tiffany Seif, the witness that had already left the courtroom. She did not raise this threat of witness intimidation as it pertained to any other witnesses. The state has done that in their brief. And the state counters in their brief that at some point the prosecutor mentioned the possibility of rebuttal witnesses. But again, the record reflects that this did not happen until well after the trial judge had already excluded the individuals from the courtroom. So, I mean, I maintain that at the time the trial judge excluded the three individuals from the courtroom, the prosecution had not offered that overriding interest. There may have been an overriding interest as it pertains to witness intimidation regarding to Tiffany Seif. But when the trial judge says the first time through there's nothing he could or should do about it because she's already left and they continue on. And then the prosecutor later makes these allegations of this eavesdropping that had occurred earlier in the courtroom. And it's at this point that the judge kind of, you know, puts his hands up and says, all right, you know, we had a case earlier in the week where there was some witness intimidation and there's a prosecution going on. And so he says in order to preserve the integrity of the proceedings, I'm removing these individuals. And that fails the fourth problem because it's not a fact in support of his finding. It's not a fact in support of his findings? It's not a fact. It's a reason. He did not state I find that this threat of witness intimidation. You're saying there is magic language that has to be used. Specific language, not magic language. But specific language the court has to articulate his findings more specifically, you're saying? Yes. Is there a certain language that has to be used? I'm not going to go so far as to say there's a magic words requirement. But however the judge wishes, whatever language the judge wishes to use, he or she must make findings in support of that determination. And the case is saying broad and general statements will not suffice. And that's what we had here. What if the findings are so readily apparent? And that is that you have these individuals that, I mean, it's pretty clear that there's some issue of witness intimidation that's been brought forth before the court. That these three individuals engaged in that witness intimidation, haven't they forfeited their right to be present? Your Honor, I think if the judge had, at the time, the prosecutor first raised the issue, if the judge had made findings in support of that, removing those three individuals, I don't know if we'd be here today. But the judge didn't do that. When first confronted with the issue, the judge said, well, there's nothing I could or should do. She's already left. She's already testified. So this threat of witness intimidation is moot. And he carries on. And then later he revisits the issue. And we don't know if they're going to intimidate any other witnesses because it was just this one witness that we were worried about. The prosecutor's remarks were confined solely to Tiffany Seif. She did not discuss any other witnesses until later. And the state raises the point that at some point she raised the possibility of rebuttal witnesses. But, A, that's not happening until well after the judge had made his decision. And, B, she did not articulate any threat of witness intimidation as it pertained to her rebuttal witnesses. Well, how would she know ahead of time what their plans might have been? What she related to the judge is something that had happened after the testimony. So wouldn't it be logical to assume that if one witness was intimidated or there was an intent to intimidate one witness, that there certainly might, couldn't the judge infer that there might be the same type of action with respect to another witness? I think your point about the inferences is well stated, Your Honor. And to turn it on its head respectfully, that's all we can do here is make inferences about what might have happened. Because the only record we have is one paragraph from, in the record, from the prosecutor where she explains what has happened. We don't have any of this on the record where the first time she comes up and she brings this concern about these three individuals to the court's attention. We don't have that in the record. All we have is her summarization of that after the fact. And she says, You know, Your Honor, earlier I spoke with you about these three individuals. You said there was nothing you could do. But now it's come to my attention that there's some eavesdropping going on in the courtroom, and one of my assistants has brought it to my attention that these black males in the back were heard talking about what they should say if someone asks them about when they left the courtroom. And I'm going to renew my concerns. And at this point the judge says, Okay, everybody, you know, these three are out. But it's based on something he previously deemed non-criminal. Well, but she renewed, you just indicated, she renewed her concerns. So the judge had a reason, given the renewed concerns, did he not to reconsider his earlier statement? And as I stated previously, yes, he does have the right to reconsider, especially when the prosecutor renews her concerns. But, I mean, I guess is he going back in time and saying, Well, earlier I said there's nothing I could do, but now there's something I can do. There's no surreptitious activity that's being alleged here. For all we know, these individuals whose actions were previously deemed non-criminal were sitting in the courtroom, and the assistant state's attorneys were having a conversation at the council table, and then it was somehow overheard, and then they went and in turn eavesdropped on the individuals. And that gets back to this point about the inferences, Your Honor, is because there's nothing in the record here that really makes it clear why these people were removed. Was it because they followed Tiffany Seif earlier? Did you, you know, did the judge change his mind about that ruling? Was it because they were eavesdropping? And the reason that the judge needed to make these specific findings is so that we don't have to argue about inferences. So I think that's the weakness, whether you look at it in terms of the first or the fourth prong of the press enterprise Waller test, is that all we're left here with is inferences, and that's because the trial judge didn't make any findings. He made a broad general statement. He said in order to preserve the integrity of the proceedings. Well, that's a reason. That's not a finding. Did your client waive any right to a public hearing? He did not, Your Honor. And he did not make, if I may have one moment, please. The reason there was no waiver is because my client never made a knowing and intelligent waiver of a known right. Now, he didn't object to it, right to the closure to the exclusion of these witnesses. He didn't have defense counsel. Arguably did object at first. He said, I object. And because, pardon me, Your Honor, I don't want this to cast aspersions upon my client. If we're going to be making accusations, then we need to have some testimony. I object to the prosecutor just making these accusations into the possible aspersions that might be cast upon my client. The judge says, OK, don't worry. That's not going to happen. And at some point, defense counsel says, well, I don't think I have standing to address that. That's in the record. But that doesn't constitute a knowing and intelligent waiver of that constitutional right by the defendant. Well, his attorney can't waive it for him by his statements or his actions? This isn't one of the few personal rights the defendant has, is it? I believe it's structural error, Your Honor. That's a different point than the question I just asked. Aren't there certain rights the defendant has personally? If this is not one of them, can't his attorney waive it for him? I think, I mean, there's a gray area here. I don't know that, I'm not sure that I can say that his attorney could waive a constitutional right thereby forfeiting his ability to challenge structural error. And I think that's the problem here. Now, I know that the state cited a case in its brief for the holding that the right to a public trial can be waived. That's the Peretz case. And Peretz relies solely on Levin v. United States Supreme Court case from 1960. Two things about this case. One, it's decided 24 years before Press, Enterprise, and Waller. And second, it's a 5-4 decision. It's based on forfeiture principles. Now, if I might be permitted to briefly conclude, Your Honor. You may. The forfeiture versus waiver distinction has developed since that case. I don't think it's good law anymore. And in closing, it's a 5-4 decision. In dissent, Justice Brennan stated, There are, to be sure, trial areas as to which specific objection is required of counsel, but where fundamental constitutional guarantees are omitted. The question is, rather, whether consent to proceed without the constitutional protection can be found. I think that is the more appropriate statement to be employed here. My client did not consent to proceed without the constitutional protection. He did not make a knowing, intelligent waiver of that constitutional right. Counsel, you'll have time on rebuttal. Okay. And with that, I thank you, Your Honors. And Mr. Williams requests that this Court reverses probation and revocation pending the outcome of the new hearing on the merits. Thank you. Mr. Hoffman? Good morning, Your Honors. Good morning. May it please the Court, I am Jerry Hoffman. It's my pleasure to represent the people of the State of Illinois before the Assembly of Court as usual. As this Court's questions have indicated, you're aware that we have raised several arguments in opposition to the request for a re-hearing. First of all, we claim that the right to open hearing does not apply in a probation and revocation hearing. Then we claim that it was waived, it was forfeited, which are different issues, and that the enterprise test was met. First of all, because that was what was first addressed by the Court, counsel says that we should find that there is a right here, even though we know that the United States Supreme Court and our Supreme Court in Lindsay have found it to be civil, because, well, it's a constitutional right. Well, Gagnon or Gagnon, however you want to pronounce it, dealt with a constitutional right, too. They said that it was discretionary in a probation hearing whether or not counsel was appointed. We know that the Fifth Amendment gives one right to counsel, and it's been found that indigent have to be appointed, and yet they said that this was discretionary, it was not necessary. In Lindsay, our Supreme Court found that it was permissible for the people to call the defendant as a witness, meaning that the Fifth Amendment right did not apply. Therefore, just because it's a constitutional right clearly doesn't mean that it applies at a probation and revocation hearing. With regard to the definition, we stand on what we said. Yeah, there are two definitions, but there's no indication which definition applies here, and given that our Supreme Court has found and the United States Supreme Court has found that they are civil proceedings, there's no reason to find that an open court means more than just a court that is not secretive, that is ex parte, that does not have all of the six requirements which the United States Supreme Court and our Supreme Court have said are proper and which were all guaranteed here, which all came through. Isn't there a liberty interest involved, though, here, even though it's a civil proceeding? If a defendant's probation is revoked, certainly he's resentenced on the underlying offense and could be jailed or sent to the Department of Corrections. So this isn't exactly a civil proceeding, is it? Or certainly it has features of criminal proceedings as well. Well, it arises out of a criminal proceeding, but all I can say is that our Supreme Court and the United States Supreme Court have said that they're civil proceedings, and they laid out the six requirements they found necessary, which does not involve this. And as I said, they have found other constitutional rights in a criminal proceeding, counsel and the Fifth Amendment right against self-incrimination, do not apply. So why is this special, especially when we're talking about here not a totally closed proceeding? We're talking about my understanding that this Court in Taylor went through and analyzed the substantial versus the overriding interest test and found no reason to apply that, although some federal courts do and some state courts do. We would ask this Court to reexamine that because given the interests of the open hearing, which are basically that the attorneys, the court, the judge, and everybody perform their tasks diligently and properly and honestly and the honesty of the witnesses, I would say a summary of that is the integrity of the proceeding. Given that, even if certain people are excluded, as long as it's open so the rest of the public can see it, that integrity is still guaranteed. It's still there. How do you respond to counsel's arguments that the enterprise test was not met? Well, I think clearly the four subjects are, the four parts of the enterprise test are the overriding interest, that it's narrowly tailored, that the judge considers alternatives, and that he make sufficient findings. I don't think there's any doubt that it was narrowly tailored. He said, okay, these three people, those three people who went out and were looking at following Tiffany's self and the witness assistant, and later on found out that not only were they out there, but then they were deciding, well, we've got to make something up. We've got to decide. We've got to tell them why we were out there, which is suspicious in and of itself. So I think that it was narrowly tailored by just cutting those three people out by excluding them. He also considered alternatives because originally when he just knew that they had gone out and were there while Tiffany's self was outside, he said, well, I'm not going to do anything about it. And then later when he found that they had been discussing what they might answer to him as to why they were there, then he changed and took the alternative of excluding them. So I think two and three are clearly met. I would argue that the overriding interest is also there because, as I said, if you summarize the reasons for the open hearings requirement, it's the integrity of the proceedings. And that's what the judge said. The judge said, well, I'm concerned about the integrity of the proceedings. So that goes to four also. He made a sufficient finding. The integrity of the proceedings were at issue because we're dealing with possible witness intimidation, as Justice Enum said. The fact is, yes, that this decision was made by the judge before we found out who was going to testify for the defendant and what possible people might testify in rebuttal for the people. But it's not uncommon for – I mean, certainly it's not uncommon to have the defendant present a case, and it's not uncommon then for the people to present rebuttal. And so there was an open chance that there would be rebuttal and testimony by the defendant and possibly other witnesses for him. So we would argue that that test was met. Mr. Hoffman, do you want to speak to the waiver issue? Yes. Again, we think it's both waived and forfeited. It's forfeited because there was no objection either at the time or in the post-hearing motion. The counsel says – well, the defendant in this high brief says, well, really when counsel said – defense counsel below said we don't have a dog in the fight, he was talking about possible investigation of these three people, which the people did say they were going to possibly pursue. But if you go on – and this is at page 12 and 13 of our brief. It's from 359 and 362 of the record. He goes on and says, to indicate that, well, if there's no accusation against my client, then I'm not willing to go. I don't really think I have any kind of standing to respond as long as you're not considering it in any kind of piece of evidence against my client. Then he says, I don't really want to contaminate proceedings for the questions of these three individuals as long as everybody is clear that my client had nothing to do with it. Later on, he says, so we have nothing to do with any of this, Judge, that's my point. Clearly, he was saying, I don't care if you exclude these people. It's not up to me. He agreed to the partial closure of this hearing. He, meaning the attorney? Defense counsel. And as Your Honor indicated before, it is not one of the requirements or one of the rights that is given to, personally, the defendant. Well, what about counsel's argument that he made when I indicated that? That this is a constitutional right and that this is the type of right that perhaps an attorney couldn't waive for a client, even though it's not one of the special rights that have been previously enumerated? Well, this court would have to find that for the first time, that it is one of the personal rights of the defendant. I would argue that, except for those enumerated rights, all statutory and constitutional rights, the defendant has a constitutional right to present witnesses. And yet, who makes that determination which witnesses are presented? Counsel. And counsel makes it regardless of whether the defendant says, well, I want this guy called. Counsel has the right to say, no, this witness will hurt you. And so, any constitutional or statutory right that is not among, I think it's five listed by the Illinois Supreme Court, simply do not go personally to the defendant. If there are no further questions. The constitutional rights you're talking about are due process rights, correct? Is there a difference between the right to a public trial and the due process rights as set forth in GANI? Well, I believe courts have looked at this both on the sense of having an open hearing and the Sixth Amendment due process. And under both said that, well, we use this test. It can be closed under certain circumstances. And again, the United States Supreme Court and our Supreme Court has said that this proceeding is civil. So, I don't think there's any difference whether you attack it under the due process right or the specific right to an open hearing. It's constitutional under either and has not been listed as the right at a probation revocation hearing. There are some courts that have found that, I mean, Alvarez is cited by the- There are some courts that have, yes. There are some other courts. Again, the Texas case is distinguishable because they found it to be criminal. That case has been overturned and withdrawn. And the Alvarez court, yes, they said in this type of closure, there is a right to a probation hearing, to an open hearing and probation revocation. This court, of course, does not have to follow that. Thank you. If there are no further questions, we will let this court look for any findings. Thank you. Mr. Harris. Thank you, Your Honor. Just a couple quick points I'd like to make. Counsel just a moment ago said that the Texas case has been overturned. That's not really the case. The Texas case was set aside. The Texas case held that the relator had a right to a speedy trial contingent upon his-he wasn't going to waive extradition from Virginia. He later challenged it. And so that case was set aside, as I stated in my brief. The reasoning still holds true. So that case wasn't exactly overturned. Now, Justice Zinoff, you made the point to counsel about, well, isn't it a liberty interest involved? And the state admitted that, and the counsel admitted this, yes, it arises out of a criminal proceeding, this probation revocation proceeding. Although it's a civil proceeding, it arises out of a criminal proceeding. And he said, well, why is this special? Because there are some other rights, you know, in Lindsay, there was a right against self-incrimination. It was found not to be incorporated. The courts in Illinois have kind of been doing this selective incorporation of due process rights, which are applicable to a trial. And we selectively incorporated these rights into the probation revocation proceeding. And so we have to make this determination on, does this particular right rise to the level that we should incorporate it? And so when counsel says, well, why is this special? I would turn to the case law, like I said at the onset. I simply can't find or think of a good reason why this right would not be incorporated. In Waller, the court stated the press and the public have a qualified First Amendment right to attend criminal proceedings. And that's also related to the strong interest in exposing allegations of police misconduct. That's no less prevalent in a probation revocation proceeding, especially where we don't even have a jury. The judge sits and is the sole decider of this person's fate. Now, my client went to this civil proceeding. We can call it that. But then he walked out of there to prison for eight and a half years. So when counsel says, well, why is this special? I looked at AP versus MEE, first district case from 2004 that I cited in my brief. Judicial proceedings in the United States are open to the public in criminal cases by constitutional command and in civil cases by force of tradition. And in that case, that's a quote there that's cited from the matter of Carnicky, the federal case in my brief, where Justice Easterbrook says, any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat. This requires rigorous justification. And so our point here is not that the judge was not did not have the ability to remove these people from the courtroom. It's simply that he had to apply and adhere to the press. Waller test. And he did not do that. You discussed earlier the difference between forfeiture and waiver. If there was forfeiture in this case, why should we overlook forfeiture? Well, Illinois courts have considered this structural error. That's in the United States Supreme Court. In recent cases, it's considered this structural error, which satisfies. Well, isn't isn't the first step to determine whether or not there's clear and plain error and then to go on to whether the first prong or the second prong applies? Yes. So I stand on my earlier comments. There was clear and plain error here. How can there be clear and plain error when we have Alvarez says that you have the right to a public PTR hearing? And then Williams from Mississippi Supreme Court and several other courts have said you don't have the right to a public PTR hearing. And in Illinois, the Illinois Supreme Court hasn't spoken on that issue yet. How is it? How is it a clear error for this attorney to not object at that point? I'm not sure I'm familiar with the Williams case. I mean, my research. I do have additional authority to file supplemental authority from other states where they have held that the press. Waller test is applicable in civil proceedings. So I'm not familiar with the case which you speak of. But given the traditional presumption of openness in a trial and given the fact that this is a proceeding, which the statement arises out of a criminal proceeding. I think the judge, it was he should have applied that test. I think it was error not to apply the test. If we hold to the contrary, then we're telling the judges that preside over any civil proceeding that they have carte blanche authority to remove people from the courtroom without any justification. Now, if I may be permitted to finish your sentence, we don't have another test out there. This is the test we've got. So I don't think we want to tell judges presiding over civil proceedings. They have carte blanche authority to remove people without giving justification. And in conclusion, your honor, my client respectfully requests that this court reverses probation revocation pending a hearing on merit. Thank you very much, counsel. At this time, the court will take the matter under advisement and render a decision in due course. We stand in brief recess until the next case. Thank you.